IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL GAINEY,
    Plaintiff,

vs.                                    Case No.: 3:16cv486/MCR/EMT

LUIS A. LOPEZ-RIVERA,
    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This cause is before the court upon Defendant Luis A. Lopez-Rivera's Motion to Dismiss Plaintiff's Amended Complaint and incorporated memorandum of law (ECF No. 15). Plaintiff has filed a Response in opposition (ECF No. 17).

Dismissals for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive the motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> . . . a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court

> should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.  Finally, consistent with the foregoing precepts, in civil rights cases more than "mere conclusory notice pleading" is required, and a complaint is subject to dismissal "as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation and citation omitted).

Defendant moves for dismissal of Plaintiff's lone civil rights claim raised under the Eighth Amendment based upon deliberate indifference to his serious medical needs.  Plaintiff was at all times relevant an inmate of the Florida Department of Corrections ("DOC") housed at Okaloosa Correctional Institution ("OCI"). Defendant (or "Dr. Lopez") was a physician at OCI during the time period in question.

Plaintiff alleges that on September 27, 2012, he suffered an injury to his orbital socket and eye, for which he alleges constitutionally inadequate medical treatment. Plaintiff alleges that on the day of the injury, Defendant referred Plaintiff to an eye specialist, Dr. John Tugwell, for a consultation (ECF No. 14 at ¶3).  Dr. Tugwell saw Plaintiff on the following day and diagnosed him with a macular tear and hemorrhage (*id.* at ¶4).  Dr. Tugwell also recommended to Dr. Lopez that Plaintiff see a retinal specialist for prompt treatment with follow-up needed within the next month (*id.* at

¶5). On that same day, Defendant requested an emergency appointment with Retina Specialty Institute in Pensacola, but when no appointment was accomplished—for reasons not clear—on October 1st, 2012, Defendant changed the referral from the Retina Specialty Institute to Dr. Samuel Poppell at Emerald Coast Eye Institute (*id.* at ¶¶6–8). Again for reasons not clear, this referral was not actually made until October 12, 2012, and the appointment date then available was November 15, 2012 (*id.* at ¶9). The referral was for an evaluation but not treatment (*id.* at ¶10).

Dr. Poppell saw Plaintiff and reported to Defendant that Plaintiff had a choroidal rupture and vitreous hemorrhage, for which he recommended that a surgical procedure would be able to restore his vision at least to the point that Plaintiff would be able to get a driver's license (*id.* at ¶¶11–12). However, because Dr. Poppell was not contracted with the DOC, he would not be able to perform the surgery (id. at ¶11). Dr. Poppel described Plaintiff's condition as serious and in need of prompt surgical treatment (*id.* at ¶¶12, 14). According to Plaintiff, "Choroidal rupture and vitreous hemorrhage, if not promptly treated, can cause a loss of vision" (*id.* at ¶13). However, no treatment was immediately provided, and a ophthalmology consultation that was evidently arranged or requested was still pending as of February 7, 2013, and on March 7, 2013, records showed that no surgical appointment had yet been set (*id.* at

¶15–17). Plaintiff thus alleges that from January to March of 2013 Defendant "took no action to secure treatment" for his serious medical need (*id.* at ¶18).

On April 19, 2013, Plaintiff was seen by Dr. James Staman of the Bradford County Eye Center in Starke, Florida, and upon evaluation, Plaintiff was informed that his vision could not be surgically corrected because of the formation of scar tissue in the affected area (*id.* at ¶19–20). As a result, Plaintiff alleges he is now "permanently legally blind" in his left eye (*id.* at ¶21, misnumbered as ¶5).

Accordingly, Plaintiff alleges that Defendant was aware of Plaintiff's condition and the need for timely treatment but did not arrange for timely treatment, resulting in the adverse consequences to Plaintiff's eyesight.

A delay in providing medical treatment can constitute deliberate indifference in violation of an inmate's constitutional rights. Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). An inmate who complains of a delay in medical treatment must be able to prove the detrimental effect of the delay. Townsend v. Jefferson Cnty., 582 F.3d 1252, 1259 (11th Cir. 2009). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally

exacerbate the medical problem." See Youmans v. Gagnon, 626 F.3d 557, 561 (11th Cir. 2010); *see also* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In delay of treatment cases, relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007). In addition, an objectively serious deprivation requires showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Harris, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). "Deliberate indifference has three components: (1) subjective knowledge of a risk of

serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

The court finds that Plaintiff in this action states a valid claim that his medical need was a known, serious one that required timely medical intervention, and that such intervention was not timely provided, resulting in serious consequences to his vision. Citing Farmer, *supra*, Defendant contends that it must be shown that he was actually aware of the specific harm that would befall Plaintiff in order to establish deliberate indifference. To the extent that Defendant suggests that there must be *direct* evidence of Defendant's own specific beliefs or awareness, Farmer itself dispels that notion:

> Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. We doubt that a subjective approach will present prison officials with any serious motivation to take refuge in the zone between "ignorance of obvious risks" and "actual knowledge of risks." Whether a prison official had the requisite knowledge of a substantial risk is a question of

> fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

Farmer, 511 U.S. at 842, 114 S. Ct. at 1981 (citations and quotations omitted).

Defendant also indicates that, because he has no specific training in ophthalmology, he cannot be found to have known about the specific harm that would have resulted, or did result, without immediate surgical intervention. However, the deliberate indifference standard does not necessarily require that a medical defendant know the precise outcome of a failure to treat, especially where as here it is "obvious even to a layperson" that "delay would detrimentally exacerbate the medical problem." Youmans, *supra*. Given that Defendant referred the problem to an outside specialist—which alone tends to reflect Defendant's lack of expertise in this area—and was then informed by that specialist of the urgent need for further treatment, the court finds that Plaintiff's allegations fairly establish that Defendant had sufficient knowledge of a serious risk of harm to Plaintiff.

Last, Defendant asserts that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555

U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  The Supreme Court has explained that "the driving force" behind the qualified immunity doctrine is to ensure that "'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." Anderson v. Creighton, 483 U.S. 635, 640 n.2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  Because this defense should be applied at the earliest possible stage of litigation, it is proper for a district court to rule on a claim of qualified immunity asserted in a motion to dismiss, Gonzalez, 325 F.3d at 1233, although the defense is more "typically addressed at the summary judgment stage of a case." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).  To survive a motion to dismiss on qualified immunity grounds, a plaintiff must satisfy the two-pronged qualified-immunity standard:  (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were "clearly established" when the defendant committed the complained-of act.  Pearson, 555 U.S. at 232.  A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other.  *Id.* at 236.[1]

---

[1] As Defendant asserts, to receive qualified immunity, a public official must first demonstrate that he was acting within the scope of his discretionary authority when the allegedly wrongful acts

Case No.: 3:16cv486/MCR/EMT

Since the court has already concluded that the facts as alleged by Plaintiff are sufficient to constitute a violation of his Eighth Amendment rights, the first prong of the qualified immunity analysis is met. With regard to the "clearly established" prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Loftus v. Clark–Moore, 690 F.3d 1200, 1204 (11th Cir. 2012) (internal quotation marks omitted). A case with materially identical facts is not necessary for the law to be clearly established, "but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." Youmans, 626 F.3d at 563 (citation omitted).

"[Eleventh Circuit] cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference." Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995) (citing Carswell v. Bay Cnty., 854 F.2d 454, 457 (11th Cir. 1988); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)). "A core principle of Eighth

---

occurred. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Here, there is no dispute that Defendant was acting within his discretionary authority.

Case No.: 3:16cv486/MCR/EMT

Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott, 182 F .3d at 1257. Thus, the law in this circuit is clearly established that a significant delay in treatment for injuries that are obviously serious medical needs is constitutionally actionable. Harris v. Coweta Cty., 21 F.3d at 393–94 (collecting cases). Especially at the stage of a motion to dismiss, the court finds under the alleged facts that Defendant's delay in obtaining necessary treatment for Plaintiff amounted to a violation of a clearly established right under the Eighth Amendment.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

That Defendant's Motion to Dismiss (ECF No. 15) be **DENIED**.

At Pensacola, Florida, this 22nd day of February 2018.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**